UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM C. DEMETROPOULOS,

    Plaintiff,

v.                                    Case No. 08-C-0420

DERYNDA FOODS, INC.,

    Defendant.

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. BACKGROUND

The plaintiff, William C. Demetropoulos ("Demetropoulos"), who is proceeding pro se, commenced this action on May 14, 2008 by filing a complaint naming Derynda Foods, Inc. ("Derynda") as the defendant. Demetropoulos was employed by Derynda primarily as a cook for approximately ten months before being terminated on December 6, 2008. Demetropoulos contends that he was wrongly terminated. While the complaint is not explicit, proceedings in this matter have made it clear that Demetropoulos maintains that he is disabled, was not provided a reasonable accommodation for, and was fired because of, his disabilities, in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. On November 20, 2009, the defendants filed a motion for summary judgment. That motion is now fully briefed and is ready for resolution.

### II. FACTS

Along with its motion for summary judgment, Derynda filed a set of proposed findings of fact pursuant to Civil Local Rule 56.2 (E.D. Wis.).[1] Derynda did not support its proposed findings of fact

---

[1] On January 26, 2010, the local rules of this district were amended. The current applicable rule is Civil L.R. 56(b). The local rule citations found throughout this decision and order are the rules which were in effect at the time the defendant filed its motion for summary judgment.

with specific citations to the evidence, as per Civil L.R. 56.2(a), but nevertheless supported its motion with two sworn affidavits, together with certain documents. Demetropoulos' unsigned letters, filed on November 24, 2009 and January 15, 2010, cannot suffice as proper responses to Derynda's summary judgment motion in accordance with Civil L.R. 7.1 and 56.2(b). Nor can Demetropoulos' unsigned letters be introduced as affidavits because they are not executed under oath. As a result, the court is a bit hamstrung in its effort to decide the defendant's motion. That said, the court will decide Derynda's motion for summary judgment with the limited tools available. As best as the court can glean from the parties' submissions, the material undisputed facts are as follows.

Demetropoulos worked as a cook at a Culver's franchise restaurant operated by Derynda Foods, Inc. ("Derynda") from February 2006 until his discharge by Culver's on or about December 6, 2006. (Czaplewski Aff.) His duties required, among other things, "use of proper cooking and holding times" in order to fill orders in five minutes or less. (*Id.* at 9.)

In or around January 2005, Demetropoulos visited Dr. Robert L. Zoeller's office for an outpatient disability examination. (Sosey Aff. at 10-16.) Demetropoulos' examination is documented in a medical report, dated January 3, 2005. (*Id.*) Demetropoulos produced the medical report to Derynda, pursuant to pretrial disclosure and discovery. (Sosey Aff. at 1-2.) Dr. Zoeller states in his report that Demetropoulos referenced "low and mid back and neck pain, shoulder pain, foot pain and obesity." (Sosey Aff. at 10.)

Dr. Zoeller observed in his report that Demetropolous' neck and back pain are "likely attributable to degenerative disc disease." (*Id.* at 11.) Dr. Zoeller recommended lifting restrictions of fifty pounds and twenty-five pounds and would "allow position changes every 60 minutes." (*Id.*) Dr. Zoeller further noted that Demetropolous "apparently had a motorcycle accident two or three years

2

ago in which he hurt his right foot." (*Id.* at 10.) Demetropoulos "was told he had a fracture in his right foot" but did not require surgery and did not receive further treatment for his foot. (*Id.*)

On June 13, 2006, Demetropoulos obtained a disability letter from his family doctor, Dr. Patrick Fitzgerald, which Demetropoulos then submitted to Derynda. (Sosey Aff. at 25-26.) Dr. Fitzgerald's letter indicated findings of neck pain characteristic of degenerative disc disease and evidence of impingement syndrome in his shoulders. (Sosey Aff. at 8.) In his letter, Dr. Fitzgerald advised that Demetropoulos not lift beyond "50 pounds at any given time and no more than 25 pounds frequently." (*Id.*) Dr. Fitzgerald also restricted Demetropoulos in activities that involved reaching overhead to "fifteen minutes at a time or two hours in a given day." (*Id.*)

Demetropoulos experienced the same physical problems[2] described in Dr. Fitzgerald's letter at the time he was hired. (Sosey Aff. 25.) Demetropoulos mentioned these problems to Derynda at his hiring but did not provide a written list of disabilities or limitations. (*Id.*) He did not think his condition would be a problem. (*Id.* at 25-26.) Derynda never asked him to exceed these limitations. (*Id.* at 24.)[3]

Demetropoulos' employment file at Culver's contains a January 4, 2007 signed letter from Darrell Propp, an owner of Culver's of Oconomowoc, to Wisconsin Unemployment Services. (Czaplewski Aff. at 9.) In the letter, Propp lists various warnings Demetropoulos received prior to and upon his discharge. (*Id.*) During his time at Culver's, Demetropoulos received ten verbal warnings and at least one written warning from supervisors for poor work performance. (*Id.*) The

---

[2] The record is unclear regarding Derynda's knowledge of Demetropoulos' physical condition from the time that he was hired in February 2006 until he submitted Dr. Fitzgerald's letter to Derynda in June, 2006. In an unsworn response to Derynda's interrogatory request to identify "any and all disabilities" he claims to have had during his employment at Culver's, Demetropoulos states that he "had told them that [he had] problems walking[,] standing for long periods of time and also lifting and car[ry]ing things up stairs." (Sosey Aff. at 30.)

[3] When asked if Derynda accommodated the physical limitations contained in Dr. Fitzgerald's letter, Demetropoulos claimed "…they didn't force me to lift anything, you know, into my limitations what I provided them. Just the break part…They didn't let me sit down when I needed to, and I think that was part of the fact that [the manager] felt that I didn't have to do the sit-down part." (Sosey Aff. at 24.)

3

written "Employee Warning Notice," dated June 23, 2006, confirms that Demetropoulos repeatedly overlooked items and delayed orders. Demetropoulos' termination slip is dated December 6, 2006. (*Id.* at 5-8.)

Demetropoulos filed a Charge of Discrimination with the Wisconsin Equal Rights Division ("WERD") on May 8, 2007, and with the United States Equal Employment Opportunity Commission ("EEOC") on May 18, 2007. In his complaint, Demetropoulos alleged discrimination based on disability in violation of the Americans with Disabilities Act, as amended. (Sosey Aff. at 4-7.)[4] Demetropoulos, in his EEOC Charge, identified the dates the discrimination took place as "12-06-2006 [to] 12-06-2006." (*Id.* at 7.) Demetropoulos' EEOC Charge was dismissed on March 28, 2008, due to the EEOC's inability to "conclude that the information obtained establishes a violation of the statutes." (*Id.* at 4.) Similarly, Demetropoulos' WERD Charge was dismissed without prejudice as of July 7, 2008, due to his failure to respond to a certified letter within the specified time. (*Id.* at 5.)

### III. SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963

---

[4] Demetropoulos also alleged that Derynda violated the Age Discrimination in Employment Act of 1967, as amended. (Sosey Aff. 6-7.) However, in light of Demetropoulos' failure to state an age discrimination claim in his federal court complaint and the complete absence of evidence supporting such a claim, this court will address only Demetropoulos' ADA claim.

4

amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Twenhafel v. State Auto Prop. and Cas. Ins. Co.*, 581 F.3d 625, 630 (7th Cir. 2009). To state it differently, a party will be successful in opposing summary judgment only when they "present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004) (citing *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)). The evidence must create more than "some metaphysical doubt as to the material facts." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996)). A mere scintilla of evidence

in support of the nonmovant's position is insufficient. *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

On September 8, 2008, Congress amended the ADA definition of "disability" under section 3 of the ADA Amendments Act of 2008. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). In section 8 of the Act, Congress set the effective date of the Amendments as January 1, 2009. The Seventh Circuit "use[s] the laws and interpretations that were in force when the complained-of acts occurred." *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008). Thus, because Demetropoulos' employment with Derynda ended in 2006, the court will analyze Demetropoulos' claims under the pre-amendment ADA.

The ADA protects "qualified individuals with a disability" from discrimination in their employment, the hiring process, or promotions. 42 U.S.C. § 12112(a); *Rooney v. Koch Air, LLC,* 410 F.3d 376, 380 (7th Cir. 2005). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111. The term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102.

To succeed on his disability discrimination claim, Demetropoulos must demonstrate that "(1) he is disabled under the ADA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he has suffered from an adverse employment decision because of the disability." *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir. 2004). Derynda's motion for summary judgment focuses primarily upon whether Demetropoulos is a "qualified individual with a disability." Derynda argues that Demetropoulos has not provided evidence establishing that he is disabled under the ADA.

As the nonmoving party, Demetropoulos bears the burden at trial of establishing that he has a "disability" under the ADA. The question that must be determined is whether, construing all facts in the light most favorable to Demetropoulos, he has made a sufficient showing to establish that he has a "disability" under the ADA. In other words, if the issue of whether Demetropoulos is disabled under the ADA were to go to trial on the record now before the court, would Derynda be entitled to judgment as a matter of law? *See Walker v. Abbott Laboratories*, 416 F.3d 641, 645 (7th Cir. 2005).

The record shows Demetropoulos experienced pain in his neck, back, shoulders and right foot, likely attributable to degenerative disc disease, shoulder impingement syndrome and a previous motorcycle accident. In order to demonstrate a disability under the ADA, Demetropoulos must show that one of these conditions "substantially limit[s] one or more of [his] major life activities." 42 U.S.C. § 12102(A). Lifting, walking and standing all constitute "major life activities." 29 C.F.R. § 1630.2(i); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 948 (8th Cir. 1999). Working is also a major life activity. *See Kupstas v. City of Greenwood*, 398 F.3d 609, 612 (7th Cir. 2005).

The term "substantially" means that an individual's limitations in a major life activity must be "considerable" or "to a large degree" and not merely in a minor way. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 801 (7th Cir. 2005) (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534

7

U.S. 184, 196-97, 122 S. Ct. 681 (2002)). In order to be "substantially limited," an individual must be "so limited in one or more major life activities that he is impaired in his ability to 'perform the variety of tasks central to most people's lives.'" *Rooney v. Koch*, 410 F.3d 376, 381 (7th Cir. 2005) (quoting *Toyota*, 534 U.S. at 201). An individual is "substantially limited" when that "individual is either unable to perform, or is significantly restricted as to the condition, manner or duration under which the individual can perform a major life activity as compared to an average person in the general population." *Krocka v. City of Chicago*, 203 F.3d 507, 513 (7th Cir. 2000).

Impairments that interfere in only a minor way with the performance of the major life activities of lifting, standing and walking are not enough to establish disability. To demonstrate a substantial limitation in performing these activities, an individual must provide evidence that the impairment prevents or severely restricts that individual from performing tasks central to most people's daily lives. *See Phillip v. Ford Motor Co.*, 328 F.3d 1020, 1024-25 (8th Cir. 2003). Furthermore, to establish a substantial limitation in the major life activity of working, an individual must show a significant restriction in "the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The inability to perform one particular job does not render an individual substantially limited in the major life activity of working. *Id.*

An individual may also qualify as disabled under 42 U.S.C. § 12102(2)(B), which "extends the coverage of the ADA to persons who 'have a history of, or have been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998) (quoting 29 C.F.R. § 1630.2(k)). For an individual to establish a disability under the ADA because of a "record of" impairment, the individual's condition must fall within the definition of impairment set forth in § 12102(2)(A). *Sinkler v. Midwest Prop. Mgmt. Ltd. Pshp.,* 209 F.3d 678, 683 (7th Cir. 2000). Title 42 U.S.C.

8

§ 12102(2)(B) requires not merely a diagnosis, but a record reflecting the type of impairment that would impose a substantial limitation on one or more of the plaintiff's major life activities. *Davidson*, 133 F.3d at 510.

An individual who fails to provide evidence of an impairment substantially limiting a major life activity might still be covered under the ADA if an employer regarded the individual as disabled. To establish a disability under the "regarded as" prong of the ADA, a plaintiff must show that the employer believed the employee had an impairment that substantially limited a major life activity. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) (citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937-38 (7th Cir. 2007)). If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, there is no violation of the "regarded as" prong of the statute. *Id.*

Having set forth the applicable law, the court now considers the submitted evidence pertaining to Demetropoulos' impairments. Demetropoulos does not identify those specific "major life activities" in which he claims to be substantially limited. In his unsworn interrogatory responses, Demetropoulos states that his disabilities included "problems walking[,] standing for long periods of time and also lifting and car[ry]ing things up stairs." (Sosey Aff. at 30.) Although the Seventh Circuit has not expressly addressed whether lifting and carrying alone constitute major life activities, walking and standing have been recognized as "major life activities."

The unsigned January 3, 2005 medical report from Dr. Zoeller's office, which Demetropoulos produced to Derynda during discovery, contains evidence of medical conditions and injuries that affect, or affected at one time, Demetropoulos' ability to walk and to stand. The 2005 medical report documents Demetropoulos' neck and back pain as likely attributable to a degenerative disc condition and right foot pain associated with a motorcycle accident two or three years prior. However, medical

9

evidence of neck, back and foot injuries alone does not lead to the conclusion that Demetropoulos was "substantially limited" in his ability to walk or to stand at the time of his discharge from Culver's.

Dr. Zoeller's January 3, 2005 medical report states that Demetropoulos "rate[d] [his neck, shoulder and back] pain between 3 and 4 on a 10-point scale." (Sosey Aff. at 10.) He stated the pain occurred "over the 3 to 4 years" and that the pain tended to increase with prolonged standing. (*Id.*) Demetropoulos described his standing tolerance as no more than 60 minutes due to his neck and back pain. Demetropoulos said his neck and back pain prevented him from taking hikes and long walks. Demetropoulos also described a persistent and ongoing pain in his right foot. He claimed his tolerance for walking and standing to be no more than 60 minutes but denied experiencing numbness or weakness in his lower extremities. Dr. Zoeller stated in the report that he "would allow position changes every 60 minutes." (*Id.* at 11.)

On June 13, 2006, Demetropoulos saw Dr. Patrick Fitzgerald in a clinic and obtained an unsigned disability letter from Dr. Fitzgerald in order to give his supervisor at Culver's a better understanding of his disabilities. In the letter, Dr. Fitzgerald states that, beyond the specified lifting limitations, Demetropoulos "should be able to work without other restrictions." (*Id.* at 8.) Dr. Fitzgerald did not mention a foot injury, nor did he impose walking or standing limitations.

In assessing the degree of any limitation to Demetropoulos' ability to walk and ability to stand, the court must consider whether he is impaired in his ability to perform the variety of tasks central to most people's lives. *See Rooney v. Koch*, 410 F.3d 376, 381 (7th Cir. 2005). Nothing in the record suggests that Demetropoulos is unable to walk or stand, or is significantly restricted as to the condition, manner or duration under which he can walk or stand, as compared to an average person in the general population. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). Although Demetropoulos has submitted some evidence that he is unable to engage in favorite activities like taking hikes and long walks, this is a far cry from showing that he is substantially

10

limited in a major life activity. *See Scheerer v. Potter,* 443 F.3d 916, 920 (7th Cir. 2006) (finding that even where the plaintiff relied on a cumbersome protective boot to cover diabetic ulcers while working, his ability to walk and stand was not substantially limited).

To the contrary, the evidence establishes that, at the time he was fired, Demetropoulos was generally able to walk and stand. For example, he could complete a forty-hour work week, albeit at times with some discomfort. His ability to do so forecloses the possibility that Demetropoulos is "significantly restricted" in his ability to walk or to stand as compared to the average person. Ultimately, based on the information contained in the record, no reasonable fact finder could conclude that Demetropoulos has an "impairment that substantially limits" his ability to walk or to stand. *Cf. E.E.O.C. v. Sears Roebuck, Inc.*, 417 F.3d 789, 802 (7th Cir. 2005) (holding that a fact finder could reasonably conclude that a woman's inability to walk the equivalent of one city block without her right leg and feet becoming numb substantially limited her ability to walk).

Demetropoulos also falls short on the claim that his neck, back and shoulder injuries substantially limited his ability to lift and to carry. Demetropoulos suffered neck and back pain likely attributable to degenerative disc disease and shoulder pain associated with an impingement syndrome. In his June 13, 2006 letter, Dr. Fitzgerald states that Demetropoulos "should be limited to lifting no more than 50 pounds at any given time and no more than 25 pounds frequently." (Sosey Aff. at 8.) Demetropoulos was also restricted in activities that "involve reaching overhead with his arms" to "fifteen minutes at a time or two hours in a given day." (*Id.*)

Based on the record, no reasonable fact finder could conclude that Demetropoulos' limitations in the use of his neck, back and shoulders rise to the level of substantially limiting him in a major life activity. Indeed, limited use of one's back, neck and shoulders might affect the ability to engage in the major life activity of "lifting" and, by extension, carrying. However, to be substantially limited in the ability to lift, an individual must be hindered in even the lifting required for the routine duties

11

of daily living. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir. 1998) (finding that a flight attendant's lifting restriction of 45 pounds at once and 20 pounds regularly prevented "heavy lifting" and was not substantially limiting). There is no indication that Demetropoulos is so limited.

While Demetropoulos has not expressly argued that he was substantially limited in the major life activity of working, had he done so, Demetropoulos' claim would still falter. On January 3, 2005, Demetropoulos stated that he had been unemployed since July 4, 2004, because he was "unable to keep up." However, his Culver's application shows employment at a similar restaurant from April 11, 2005 until August 2005.

Nor does the record indicate a history of performance-related terminations on Demetropoulos' part. To the contrary, Demetropoulos' Culver's application also shows that he left his previous cook position because the restaurant closed. The record does not show that Demetropoulos was significantly restricted in a class of jobs or broad range of jobs in various classes. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 953 (7th Cir. 2000).

Likewise, Demetropoulos cannot succeed on the 42 U.S.C. § 12102(2)(B) "record of disability" prong of the ADA statute because he has not shown more than diagnoses of physical impairments that do not substantially limit a major life activity. Without evidence beyond the aforementioned medical records and doctor's note, Demetropoulos has failed to establish a genuine issue of material fact as to whether his neck, back, shoulder, or foot impairment at any point rose to the level of a substantial limitation on a major life activity.

Furthermore, there is no evidence from which it might be established that Demetropoulos qualifies as disabled under the 42 U.S.C. § 1210(2)(C) "regarded as" prong of the ADA statute. Demetropoulos has not demonstratetd that his neck and back, shoulder, or foot impairments substantially limited him in the major life activities of walking, standing, lifting or working. Nor has

he set forth evidence that Derynda's beliefs about his limitations ever exceeded his actual limitations. Given the available record, Demetropoulos has not presented a triable issue as to whether Derynda regarded him as being disabled.

Even where an individual establishes a disability, to succeed on an ADA claim the record must show that the individual is "qualified" under the ADA. In other words, the record must show that the individual "(1) satisfies the requisite skill, experience, education, and any other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Budde v. Kane County Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010) (citation omitted). The individual bears the burden of establishing that he was capable of performing the essential functions of the position or that reasonable accommodations could or should have been fashioned that would have allowed him to perform the essential functions of the position. *Ramirez v. Illinois Dept. of Human Services*, 2010 WL 1910531 (N.D. Ill. May 7, 2010) (citing *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 863 (7th Cir.2005)).

In evaluating whether an individual is "qualified," the court must consider "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Furthermore, the Seventh Circuit has shown a reluctance to second-guess an employer's judgment in describing the essential functions of its employees. *DePaoli v. Abbott Lab.*, 140 F.3d 668, 674 (7th Cir. 1998).

Demetropoulos has not shown that he can perform the essential functions of his position as a Culver's cook with or without accommodation. In a January 4, 2007 letter addressed to Wisconsin Unemployment Services, Darrell Propp, an apparent owner of the Culver's of Oconomowoc, stated that "use of proper cooking and holding times is a must." (Czaplewski Aff. at 9.) Propp stated that

13

he has four to five minutes to serve customers and "[Demetropoulos] would continually have seven to nine minute orders." (*Id.*) In the letter, Propp identifies ten dates on which Demetropoulos received verbal warnings for delaying orders. On June 23, 2006, Demetropoulos received a written "Employee Warning Notice" for missing order times. (*Id.* at 5-7.) Maintaining proper cooking and holding times is undoubtedly an essential function of a restaurant employee responsible for food preparation. In light of Demetropoulos' repeated delays, he could not perform an essential function of his position at Culver's and thus was not "qualified," at least without accommodation beyond honoring his lifting restrictions. *See DePaoli*, 140 F.3d at 674.

Furthermore, Demetropoulos has not identified or proposed any reasonable accommodations that would have permitted him to successfully meet the proper cooking and holding times expected of him. In his deposition, Demetropoulos conceded that Derynda did not require him to lift beyond his limitations. Demetropoulos stated that he requested and was denied permission to sit down as needed. However, he has not shown that such breaks would have prevented him from overlooking order items and would have allowed him to meet the cooking and holding times required by his employer. Demetropoulos has not shown himself able to perform the essential functions of his position at Culver's and has not proposed a reasonable accommodation that would allow him to do so. Thus, he is not a "*qualified* person with a disability" under the ADA.

In summary, if this matter were to proceed to trial, Demetropoulos would bear the burden of establishing that he is a "qualified person with a disability" as that term is defined by the ADA. In response to the defendant's motion for summary judgment, Demetropoulos has not submitted any evidence from which a reasonable fact-finder could conclude that his impairments meet the standards of a "disability" as that term is specifically defined by the ADA. Nor is there evidence to suggest that Demetropoulos was capable of fulfilling the essential functions of his position with or without

14
Case 2:08-cv-00420-WEC   Filed 07/20/10   Page 14 of 15   Document 64

accommodation. As a result, there exists no genuine issue of material fact, and the defendant is entitled to judgment as a matter of law.

The court understands the difficulty of proceeding as a pro se litigant and certainly sympathizes with Demetropoulos' challenging situation. However, based on the record, Demetropoulos has not satisfied his burden of demonstrating that he was a qualified individual with a disability under the ADA. Consequently, he has not made a prima facie case of disability discrimination under the ADA and, therefore, Derynda is entitled to summary judgment.

In conclusion, and for all of the foregoing reasons, the defendant's motion for summary judgment will be granted and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 20th day of July 2010, at Milwaukee, Wisconsin.

                                        **BY THE COURT:**

                                        s/ William E. Callahan, Jr.
                                        WILLIAM E. CALLAHAN, JR.
                                        United States Magistrate Judge